Abraham J. Gellinoff, J.
In this article 78 proceeding, petitioner seeks a judgment restraining the respondent Mayor of the City of New York from engaging in an active campaign for the presidency of the United States. He contends that the Mayor’s activities violate the City Charter. Petitioner also asks the court to direct the Mayor to return money received as salary during the period of his absences from the city. Respondent cross-moves to dismiss the petition.
At issue is that section of the Charter which provides that: ‘ ‘ Every head of an administration or department or elected officer except councilmen who receives a salary from the city shall give his whole time to his duties and shall not engage in any other occupation, profession or employment” (New York City Charter, § 1100, subd. [a]).
Petitioner, relying solely upon published reports concerning the Mayor’s frequent absences from the city in recent months, asserts that the Mayor ‘ ‘ is not devoting his whole ‘ time to his duties ’ ” in accordance with the Charter.
But mere absence from the city is by itself insufficient to establish a violation of the Charter. The quoted portion of the section must be read not only in the context of the entire provision, but also read in light of the obvious purpose of the provision. Giving his ‘£ whole time to his duties” does not mean that the Mayor must be seated behind his desk 24 hours each day. Nor does it mean that he must personally respond to every fire, write or even read every brief produced in the office of the Corporation Counsel, or audit every check issued by the city. The Mayor is the chief executive of the city, and his £i duties ” are, primarily, to exercise those powers possessed by the city itself, *370 and to determine how to exercise those powers. To that end he may create bureaus or divisions to which he may ‘ ‘ delegate * * * specified functions, powers and duties ” (New York City Charter, § 3). He performs his duties as much when sitting at home, pondering various policy decisions, as when seated at his desk signing legislation. Likewise, he may in the same manner perform his duties even when away from the city.
Precedent, as well as common sense, supports this conclusion. It has previously been held that the pertinent Charter provision does not forbid a city official from campaigning for office (Rattray v. Lindsay, 61 Misc 2d 39). Campaigning for office — where one seeks other or greater opportunity for public service — is not comparable to engaging in an outside occupation or employment for private gain. Of course, the Rattray case (supra) involved the Mayor ’s re-election campaign, during which he was physically in the city and thus capable of performing those duties requiring his presence while engaged in the campaign. In the present case the Mayor, since declaring his candidacy for higher office, has spent much of ihis time far from the city. But, in today’s electronic and jet plane society, the Mayor can continue to be in virtually constant communication with his deputies at home, and almost immediately available in case of crisis.
In short, the purpose of the Charter provision is to ensure that the Mayor, as an “ elected officer,” devotes his time and energies to the service of his constituency, to the end that his official functions be fully performed without diverting his time and energies to the pursuit of “ any other occupation, profession or employment ” (New York City Charter, § 1100, subd. [a]) for private gain. There is not a scintilla of evidence in the petition to show that the Mayor’s physical absence from the city in order to campaign for the presidency has in any way lessened his service to his constituency or the performance of his official duties.
The relief requested in the petition is therefore denied, and the cross motion to dismiss is granted.